## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**ERIC L. MOORE,**

        **Appellant,**

**vs.**

                                             **Case No. 8:15-cv-446-T-27**

**BAMBI HERRERA-EDWARDS,**

        **Appellee.**

_____/

### ORDER

**BEFORE THE COURT** is Eric L. Moore's appeal from a final judgment entered in a bankruptcy adversary proceeding. (Dkts. 18, 22, 26).

After Bambi Herrera-Edwards filed for Chapter 11 bankruptcy protection, Moore filed a claim seeking over $10 million for services he allegedly performed under a consulting agreement. The bankruptcy court determined that the agreement was void for fraud and alternatively found that Moore performed no compensable services under the agreement. The bankruptcy court further held that Moore would be unjustly enriched if he retained a $45,000 payment that Herrera-Edwards had previously made under the agreement and entered judgment against Moore in that amount.

Moore, who is proceeding *pro se*, argues that the bankruptcy court erred by considering unpleaded allegations of fraud, by considering parol evidence in interpreting the terms of the agreement, and by allowing Herrera-Edwards to recover on an unjust-enrichment theory despite the existence of an express contract. Upon consideration, the judgment is vacated in part as to the $45,000 monetary award. The judgment is otherwise affirmed.

*Facts*[1]

Herrera-Edwards was married to Bernard Edwards, who co-founded Chic with Herrera-Edwards' cousin, Nile Rodgers. Edwards and Rodgers authored and performed many popular songs, including *We Are Family* and *Le Freak*. After Edwards died, Herrera-Edwards settled tort claims against his estate in exchange for a 37.5% interest in Edwards' copyrights.

In 2010, after comparing her royalty payments to those of her cousin, Herrera-Edwards came to suspect that she had been underpaid for years. Rodgers arranged for Herrera-Edwards to consult with Richard Leher, a highly-regarded entertainment attorney in Los Angeles, and Michael Ostin, a music executive. They concluded that Herrera-Edwards did not seem to be receiving "record," "artist," or "producer" royalties. Instead of hiring Leher, who commanded a premium billing rate, Herrera-Edwards hired Morgan & Morgan, P.A. The firm prepared a draft complaint to recover the unpaid royalties.

In the meantime, Herrera-Edwards was experiencing financial difficulties. Her investment advisor introduced her to Chuck Biddle, who had a connection to a lender, Music Royalty Consulting, Inc. ("MRCI"). In June 2011, Herrera-Edwards executed an agreement with MRCI to obtain a $1.8 million loan, which was to be secured by a lien on her royalty income. Herrera-Edwards also executed an assignment of her rights, but Jess S. Morgan & Co. ("JSM") and Bernard Edwards Co., LLC ("BEC"), as administrator and co-beneficiary of the copyrights, respectively, refused to consent to the assignment.

As a result, MRCI never made the loan. Instead, MRCI sued JSM and BEC in California state court. The claims were initially dismissed, but MRCI repleaded one claim and added Herrera-

---

[1] The following facts are taken from the findings of fact contained in the bankruptcy court's January 29, 2015 memorandum opinion. (Dkt. 9-85).

Edwards as a defendant. In response to the lawsuit, ASCAP began escrowing Herrera-Edwards' royalty payments. By June 2012, the escrowed royalties had grown to about $265,000.

On June 24, 2012, the attorney representing Herrera-Edwards in the MRCI transaction, Kendall Minter, told Herrera-Edwards that Biddle was claiming that he and Moore had found new money for her to collect. Moore had made a similar claim to Minter in January 2012, stating that he had discovered over $500,000 and could recover the money in seven to fourteen days. On July 11, 2012, Herrera-Edwards signed a "Consulting Agreement" with Moore. Among other terms, the Agreement entitled Moore to a 17% commission on "funds . . . recovered as a direct result" of his services.

Prior to executing the Agreement, Moore did not disclose that he had been convicted of grand larceny in 1999 for taking investor money under the false pretense that the funds would be invested in promoting a Prince concert. Moore also did not disclose that he had an oral agreement with MRCI to receive 50% of any royalty payments that he was able to recover for MRCI through its lawsuit against JSM and BEC.[2]

Herrera-Edwards retained Leher to represent her in the MRCI lawsuit. Leher succeeded in getting the action dismissed and was engaged to obtain the release of the royalty payments escrowed by ASCAP. However, Moore also commenced a series of phone calls and emails to Leher, ASCAP's counsel, and others regarding the escrowed royalty payments. According to Moore, the "sticking point" to releasing the funds was a UCC lien recorded by MRCI, which he could get removed.

---

[2] On appeal, Moore argues that he did disclose his interest on August 4, 2012, after the Consulting Agreement was executed. (Dkt. 18 at 24). This dispute is not material to resolution of the issues on appeal.

The escrowed royalties were ultimately released to Leher in August 2012. Pursuant to the Consulting Agreement, Moore demanded payment of 17% of the released funds. Herrera-Edwards paid Moore $44,953.53 based on the advice of her bankruptcy counsel that the payment could be reviewed and challenged in the bankruptcy court.

### Procedural History

On October 17, 2012, Herrera-Edwards filed for Chapter 11 bankruptcy protection (Bankr. Case No. 8:12-bk-15725-KRM). On April 22, 2013, the bankruptcy court approved Herrera-Edwards' rejection of the Consulting Agreement. (Dkt. 24-1). The rejection created a statutory breach, giving Moore a claim for damages subject to the claims procedures in 11 U.S.C. § 502. *Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294, 1306 (11th Cir. 2007); 11 U.S.C. §§ 365(g), 502(g). On February 28, 2014, Moore filed a proof of claim, which sought $10,131,219 for services rendered under the Consulting Agreement and for administrative expenses under 11 U.S.C. § 503(b)(3)(D) and (4). (Dkt. 9-9).

Herrera-Edwards filed objections to the claim and her own claims for relief, triggering an adversary proceeding (Adv. No. 14-ap-247-KRM). Fed. R. Bankr. P. 3007(b). Herrera-Edwards alleged that Moore was not entitled to pre-petition or rejection damages because any recovery of back-due royalties was not "a direct result" of Moore's services under the Agreement. (Dkt. 9-35 at ¶¶ 101, 110). Herrera-Edwards objected to the claim for administrative expenses because Moore had not provided a substantial contribution to the bankruptcy case and was not an attorney or accountant entitled to compensation. (*Id.* at ¶¶ 108, 111). Herrera-Edwards asserted a claim for fraudulent inducement based on Moore's failure to disclose his prior felony conviction (Count I), a claim for unjust enrichment seeking the return of the $45,000 payment that she made under the

4

Consulting Agreement (Count II), and an alternative claim for equitable disallowance (Count III).

Moore moved to dismiss Counts I, II, and III. (Dkt. 9-45). In relevant part, he argued that Herrera-Edwards failed to state a claim for fraudulent inducement because he had no duty to disclose his felony conviction, which was public record. He maintained that Herrera-Edwards could not recover on an unjust-enrichment theory because she had an adequate remedy at law. The bankruptcy court reserved jurisdiction on Moore's motion to dismiss pending trial. (Dkt. 9-86 at 1). Moore also filed a "countersuit" against Herrera-Edwards for breach of contract, unjust enrichment, bad faith, and civil theft. (Dkt. 9-68).

The bankruptcy court tried the case over six days between May 22, 2014 and July 28, 2014. (Dkt. 9-24– Dkt. 9-30). On January 8, 2015, the bankruptcy court orally announced findings of fact and conclusions of law. (Dkt. 9-69 at 17). On January 29, 2015, the bankruptcy court issued a memorandum opinion memorializing the rulings. (Dkt. 9-85). First, the bankruptcy court held that the Consulting Agreement was void and unenforceable because it was induced by fraud. (*Id.* at 13–14). Specifically, the court found that Moore falsely represented that he could recover $500,000 very quickly. That fraud was compounded by Moore's failure to disclose his interest in the MRCI lawsuit that was causing Herrera-Edwards' royalties to be withheld.

Second, the bankruptcy court held that, even if the Agreement were valid, Moore provided no compensable services under the Agreement's terms. (*Id.* at 14–20). In particular, the bankruptcy court determined that Leher and Morgan & Morgan identified the possible royalty short-falls before Moore became involved, that Leher was responsible for having the $265,000 in escrowed payments released from ASCAP, and that although Moore "persuaded" MRCI to terminate its lien, he contributed nothing of value because there was no legal basis for the lien. (*Id.* at 14–16).

5

The bankruptcy court denied Moore's administrative expense claim because his employment was never approved and he provided no benefit to the bankruptcy estate. (*Id.* at 20–24). With respect to Herrera-Edwards' unjust-enrichment claim, the bankruptcy court found that, because the Agreement was fraudulently-induced and because Moore provided no compensable services under the Agreement, it would be inequitable for Moore to retain the $45,000 payment. (*Id.* at 25–26).

The same day that the bankruptcy court entered its memorandum opinion, the court denied Moore's motion to dismiss, briefly stating that the denial was "[c]onsistent with and to implement" the oral rulings and memorandum opinion. (Dkt. 9-86).

On January 29, 2015, the bankruptcy court entered a final judgment: (1) sustaining Herrera-Edwards' objections to Moore's claims and disallowing the claims in their entirety, (2) denying Moore's request for administrative expenses, (3) entering judgment on Herrera-Edwards' claims for fraudulent inducement and unjust enrichment (Counts I and II) in the principal sum of $44,953.93 plus pre-judgment and post-judgment interest, (4) denying as moot Herrera-Edwards' claim for equitable disallowance (Count III), and (5) entering judgment in Herrera-Edwards' favor on Moore's counterclaims. (Dkt. 1-2).

### *Standard*

Moore appeals from the final judgment (Dkt. 1), which "implicates all non-final orders preceding it." *Barfield v. Brierton*, 883 F.2d 923, 930 (11th Cir. 1989). The exercise of jurisdiction is proper pursuant to 28 U.S.C. § 158(a)(1).[3] *In re Donovan*, 532 F.3d 1134, 1136 (11th Cir. 2008).

The bankruptcy court's legal conclusions are reviewed *de novo* and factual findings are

---

[3] Moore filed a separate notice of appeal in the Chapter 11 case, which was docketed as Case No. 8:15-cv-447. Because the instant appeal was taken from a final judgment resolving all matters between Moore and Herrera-Edwards, the exercise of jurisdiction is proper notwithstanding the second notice of appeal.

reviewed for clear error. *In re JLJ, Inc.*, 988 F.2d 1112, 1113 (11th Cir.1993). "A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." *Crawford v. Western Elec. Co., Inc.*, 745 F.2d 1373, 1378 (11th Cir. 1984) (internal quotation marks omitted).

***Discussion***

### 1.    *Fraudulent inducement*

The adversary complaint alleged that Moore fraudulently-induced Herrera-Edwards to sign the Consulting Agreement because Moore failed to disclose his 1999 felony conviction. (Dkt. 9-35 at ¶¶ 115-119). Moore moved to dismiss the claim, arguing that he had no duty to disclose his felony conviction because it was public record. (Dkt. 9-45 at 2). The bankruptcy court did not resolve this issue. (Dkt. 9-85 at 14 n.16). Instead, the bankruptcy court determined that Moore induced Herrera-Edwards to execute the Consulting Agreement by two other fraudulent means: Moore made a false statement that he could recover $500,000 very quickly, and Moore failed to disclose his interest in the MRCI lawsuit.

The bankruptcy court's reliance on those two facts—which were not pleaded in the adversary complaint—is the subject of Moore's third issue on appeal. Moore maintains that the bankruptcy court erred by relying on unpleaded allegations of fraud, rendering the judgment void. Moore also argues, in his first and fifth issues on appeal, that the failure to disclose his felony conviction did not state an actionable fraud claim.

In response, Herrera-Edwards asserts that federal pleading standards do not require a plaintiff to provide notice of every fact or legal theory supporting a claim. Herrera-Edwards also argues that Moore waived his challenge by failing to file a proper post-judgment motion. Herrera-Edwards

7

further maintains that her fraud claim was viable as pleaded.

Rule 9(b) applies in adversary proceedings and requires a party to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Bankr. P. 7009; Fed. R. Civ. P. 9(b). A judgment based on unpleaded allegations of fraud may constitute reversible error. *Alna Capital Assocs. v. Wagner*, 758 F.2d 562, 566 (11th Cir. 1985) (holding that the trial court did not err in considering fraudulent conduct not alleged in the pleadings, where the evidence was admitted only to show the defendant's mental state and "[n]othing in the record suggests that the court counted the unpleaded omissions among those upon which it based its judgment of fraud or its damages award.").

Pursuant to Rule 15(b), which also applies in adversary proceedings, an issue not raised by the pleadings may be tried by the parties' express or implied consent. Fed. R. Bankr. P. 7015; Fed. R. Civ. P. 15(b). If an issue is tried by the parties' express or implied consent, the issue "must be treated in all respects as if raised in the pleadings." Fed. R. Civ. P. 15(b). However, "[a] party cannot be said to have implicitly consented to the trial of an issue not presented by the pleadings unless that party should have recognized that the issue had entered the case at trial." *Gilmere v. City of Atlanta*, 864 F.2d 734, 737 (11th Cir. 1989) (internal quotation marks omitted).

Herrera-Edwards fails to address the requirements of Rule 9(b) and Rule 15(b). Herrera-Edwards points to no place in the record where Moore would have had notice that the basis of her fraud claim had changed. In fact, Herrera-Edwards' post-trial brief continued to base the fraudulent-inducement claim exclusively on Moore's failure to disclose his felony conviction. (Dkt. 9-83 at 23–24).

Accordingly, the new allegations of fraud were not tried by Moore's express or implied

consent. *See Wesco Mfg., Inc. v. Tropical Attractions of Palm Beach, Inc.*, 833 F.2d 1484, 1487

(11th Cir. 1987) (holding that a defendant's failure to object to evidence at trial did not demonstrate

implied consent where the facts were arguably relevant to other issues and where counsel failed to

mention issue in his summary at the close of evidence); *Cioffe v. Morris*, 676 F.2d 539, 542 (11th

Cir. 1982) (rejecting an argument that Rule 54(c) permits the award of relief on unpleaded issues).

Herrera-Edwards' argument that Moore waived this issue by failing to file a Rule 52 or Rule 59

motion is similarly unavailing. *See Rand v. Nat'l Fin. Ins. Co.*, 304 F.3d 1049, 1052 (11th Cir.

2002) (holding that an appellant is not required to make a Rule 59 motion as a prerequisite to an

appeal); *Gilbert v. Sterrett*, 509 F.2d 1389, 1393 (5th Cir. 1975) (holding that the appellants were

not required to file a Rule 52 motion).

The bankruptcy court erred by basing its judgment on allegations of fraud that were neither

pleaded nor tried with Moore's express or implied consent, and by failing to address the merits of

Moore's arguments relating to the viability of the fraud claim as it was pleaded. Nonetheless, the

disallowance of Moore's claims was based on an alternative holding that, even if the Consulting

Agreement were valid, Moore provided no compensable services under the Agreement. For the

reasons set forth below, the bankruptcy court's judgment disallowing Moore's claims can be

affirmed on this alternate ground. *In re Monetary Group*, 2 F.3d 1098, 1103 (11th Cir. 1993).

### 2.    *Compensable services*

The Consulting Agreement provides as follows:

COMPENSATION: Consultant shall be paid seventeen (17.0%) percent of funds or
tangible property recovered as a direct result of the Consultant's services hereunder.
In the event Consultant's efforts should result in Client receiving tangible assets such
as copyrights as part of a recovery, then the parties shall secure an independent
appraisal which values the asset and Consultant's fees shall be based upon the fair
market value of the asset. Client [*sic*] is due a fee for any recovery to client including

but not limited to reduction or removal of fees, liens, etc.

(Dkt. 25, Pl. Exh. 38). Another section of the Consulting Agreement specifies: "Consultant agrees to assist client's legal counsel with the litigation and provide information providing the firm is willing to compensate him at an hourly rate to be agreed upon and percentage of recovery." (*Id.*) Based on this language, the bankruptcy court correctly determined that the Consulting Agreement provided Moore with three types of compensation: (1) a 17% commission on funds or tangible liquid property "recovered as a direct result" of Moore' services, (2) an unspecified fee for "any recovery to client including but not limited to reduction or removal or fees, liens, etc.," and (3) an agreed-upon hourly rate and a percentage of recovery for assisting legal counsel. (Dkt. 9-85 at 8).

With respect to the first type of compensation, the bankruptcy court orally ruled as follows:

[I]t's been a a subject of great debate and inherent ambiguity, it seems to me, as to whether that's 17 percent of the new stuff that would be discovered or whether it's 17 percent of the entire royalty stream[.] . . . .

I'm going to make the finding that there were no assets recovered by Mr. Moore either pursuant to the consulting agreement or otherwise. The $265,000 was not found money; it was always Ms. Edwards' money. It was just escrowed. And it was principally the efforts of her attorneys to have the MRCI lawsuit dismissed, and the MRCI loan then had no validity. There was no loan ever made.

The MRCI UCC financing statement was to secure a loan that was never made. And Mr. Leher was perfectly capable of achieving the release of those funds, which were released to him. And the fact that Mr. Moore engaged in a campaign of telephone conversations, emails with Mr. Rymer or somebody at MRCI had no direct bearing on the recovery of that $265,000.

It would have been recovered by Mr. Leher all by himself. And I find that there was no direct recovery from the efforts of Mr. Moore. There's no proof that his emails and phone calls did anything that Leher wasn't doing. The MRCI loan was voidable anyway because the loan was never closed. There has been no other recovery, as identified in the consulting agreement.

(Dkt. 9-69 at 11-12).

The memorandum opinion included similar findings. With respect to the $265,000 in escrowed royalties, the bankruptcy court held that Leher was responsible for having the MRCI lawsuit dismissed in state court, that Leher negotiated the release of the escrowed royalties from ASCAP, and that the funds were ultimately released to Leher. (Dkt. 9-85 at 15). Even though Moore inserted himself into the process, there was no proof that his efforts contributed anything to what Leher was already doing to obtain the funds. The bankruptcy court additionally stated: "Further, these funds were historical royalties that Herrera-Edwards would have received in the ordinary course if MRCI had not sued her payors. They were not from any new sources that Moore discovered[.]" (*Id.*).

In his fourth issue on appeal, Moore argues that, by referencing "historical royalties," the bankruptcy court violated the parol evidence rule by adding terms to the Consulting Agreement. As Herrera-Edwards responds, however, the consideration of parol evidence is appropriate when a document "is ambiguous and in need of interpretation." *King v. Bray*, 867 So. 2d 1224, 1226 (Fla. 5th DCA 2004).[4] The question of whether a document is ambiguous is a question of law reviewed *de novo*. *Reynolds v. Roberts*, 202 F.3d 1303, 1313 (11th Cir. 2000). If a contract is ambiguous and requires consideration of extrinsic evidence to determine the parties' intent, findings of fact regarding the parties' intent are reviewed for clear error. *Id.*

The bankruptcy court determined that there was an ambiguity in the Agreement because it was not clear whether Moore was entitled to a 17% commission only on newly-discovered copyrights or royalties, or whether he was entitled to a 17% commission on the entire royalty stream, including royalties that Herrera-Edwards had always received. (Dkt. 9-69 at 11). Even under a

---

[4] Although the Consulting Agreement contains a New York choice-of-law provision, both parties apply Florida law.

liberal construction, Moore's initial brief does not challenge the bankruptcy court's legal conclusion that an ambiguity existed. Nor does Moore challenge the bankruptcy court's factual finding that the Agreement did not cover historical royalties.

Moreover, the bankruptcy court determined that Moore did not secure a recovery under the Consulting Agreement, or otherwise, because nothing was obtained "as a direct result" of his services. (Dkt. 9-69 at 11). Again, Moore does not specifically challenge this finding. (Dkt. 18 at 17). Moore does, however, devote a substantial portion of his initial brief to recounting evidence introduced at trial, which he maintains shows that he negotiated the release of the $265,000 in escrowed royalties and that he was responsible for terminating MRCI's UCC lien. (Dkt. 18 at 7-13, 15, 29).

Assuming the issue is properly presented, Moore demonstrates no error in the bankruptcy court's finding that the $265,000 in escrowed royalties were not released as a direct result of Moore's services. *Backar v. W. States Producing Co.*, 547 F.2d 876, 884 (5th Cir. 1977) (noting that whether the defendant's services met contractual requirements was typically a mixed question reviewed *de novo*, "but the predominance of factual questions and credibility choices" supported application of a clearly-error standard). Moore's evidence indicates, at best, that he participated in unspecified ways in Leher's negotiations.[5] Yet, as the bankruptcy court correctly concluded, even though Moore inserted himself into the process, there was no proof that his efforts contributed anything beyond what Leher was already doing to obtain the funds. (Dkt. 9-85 at 15). Moore thus fails to show that

---

[5] For instance, Moore cites Leher's testimony that Leher spent more than 20 hours dealing with Moore on the MRCI matter, as well as an email from Leher referring to himself and Moore as a "great team" and relating that they had been "thorough and aggressive." (Dkt. 9-24 at 211–12, 216-18). A letter from Herrera-Edwards' bankruptcy counsel simply recounts Moore's unverified report that he was finalizing release language with MRCI. (Dkt. 25, Pl. Exhs. 13, 96). The remaining evidence suggests no greater or more specific involvement on Moore's part. Although Moore repeatedly cites to Plaintiff's Exhibit 84, this exhibit was withdrawn and not included in the parties' supplemental record on appeal. (*See* Dkt. 25; Dkt. 22 at 27 n.11).

the escrowed funds were recovered "as a direct result" of his efforts.

With respect to the termination of MRCI's UCC lien, the bankruptcy court accepted Moore's testimony that he "persuaded" MRCI to terminate the lien. (*Id.* at 16). The bankruptcy court also found, however, that there was no legal basis for continuation of the lien and that Moore therefore contributed nothing of value. (*Id.*). Moore assigns no error to that finding.

Based on the foregoing, the bankruptcy court's alternative determination that Moore provided no compensable services under the agreement is due to be affirmed.[6] Because Moore's failure to provide any compensable services under the Agreement was the basis for the bankruptcy court's disallowance of Moore's damages claims and counterclaims (Dkt. 9-85 at 20, 24), the judgment is affirmed with respect to Moore's damages claims and counterclaims.

### 3.    *Unjust enrichment*

The remaining issue is whether the bankruptcy court erred in entering judgment in Herrera-Edwards' favor on her unjust-enrichment claim. On appeal, Moore argues that the unjust-enrichment claim was barred because the parties had an express contract governing the same subject matter. Herrera-Edwards maintains that Moore waived this issue. Alternatively, she contends that the unjust enrichment claim does not concern the same subject matter as the Consulting Agreement.

Moore argued in his motion to dismiss that Herrera-Edwards could not prevail on her unjust-enrichment claim because she had an adequate legal remedy. (Dkt. 9-45 at 5). Moore's argument on appeal is a more specific statement of that general principle. *See Solutec Corp. v. Young & Lawrence Assocs., Inc.*, 243 So. 2d 605, 606 (Fla. 4th DCA 1971). As a result, Moore did not waive

---

[6] Moore does not challenge the bankruptcy court's remaining findings on this issue. (Dkt. 9-85 at 15-20). Moore also does not challenge the bankruptcy court's denial of his administrative-expense claim or his counterclaim for *quantum meruit*. (*Id.* at 20–24).

this issue.

The bankruptcy court entered the $45,000 monetary judgment on both the fraudulent-inducement claim and the unjust-enrichment claim. (Dkt. 1-2 at ¶ 6). For the reasons stated above, the bankruptcy court erred in entering judgment on the fraudulent-inducement claim. The bankruptcy court also failed to address Moore's argument that the unjust enrichment claim was barred because Herrera-Edwards had an adequate legal remedy. Accordingly, the monetary judgment is vacated and this matter is remanded for further consideration, including a determination of the bankruptcy court's authority to finally adjudicate the state-law claims in light of *Stern v. Marshall*, 131 S. Ct. 2594, 2620 (2011).

Accordingly, it is **ORDERED**:

(1)     The final judgment of the bankruptcy court is **VACATED IN PART**, as to the bankruptcy court's entry of judgment in the debtor's favor on the debtor's claims for fraudulent inducement and unjust enrichment. The final judgment is otherwise **AFFIRMED**. The case is **REMANDED** to the bankruptcy court for further proceedings consistent with this order.

(2)     Moore's motion for oral argument (Dkt. 21) is **DENIED**.

(3)     The Clerk is direct to **CLOSE** this case.

**DONE AND ORDERED** this _17_ day of March, 2016.

JAMES D. WHITTEMORE
United States District Judge

Copies to:  Counsel of Record

14